IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**SHELIA BECK** *as Special Administrator*
*for the Estate of Jeffery D. Beck, Deceased*,
    **Plaintiff,**

v.                                     No. 3:16-cv-00668-DRH-RJD

**XPO EXPRESS, INC.,**
**ADAM ROCKHOLD,**
**JACK E. RUDOLPH, SR.,**
**and JOSHUA M. WILLIS,**
    **Defendants.**

## ORDER

**HERNDON, District Judge:**

Before the Court is plaintiff's Motion for Partial Summary Judgment (Doc. 84), and defendant XPO Express, Inc.'s Motion for Summary Judgment (Doc. 91). Based on the following, **both motions** (Docs. 84, 91) **are DENIED**.

### I. BACKGROUND

On October 21, 2016, plaintiff Shelia Beck ("Beck")—*as Special Administrator for the Estate of Jeffery D. Beck*—filed a four-count Second Amended Complaint naming defendants' XPO Express, Inc. ("XPO"), Adam Rockhold ("Rockhold"), Jack Rudolph, Sr. ("Rudolph"), and Joshua Willis ("Willis") (Doc. 71).[1] Beck alleged that on May 19, 2016, Coyote Logistics, LLC, a

---

[1] XPO is an interstate for-hire motor carrier that provides logistics and transportation services (Doc. 72 at 2); Rockhold provided transportation in interstate commerce on behalf of XPO (Doc. 75 at 3); Rudolph is an employee of Rockhold (Doc. 73 at 3); and, Willis is Rudolph's son (Doc. 74 at 3).

subsidiary of United Parcel Service, contracted XPO to retrieve and transport a shipment of blood—on behalf of the American Red Cross—from Cleveland, Ohio to its final destination of St. Louis, Missouri[2] (*Id*. at 5). Approximately one week later on May 25th, XPO assigned the delivery to Rockhold under a Subcontractor's Agreement (Docs. 71 at 5; 71-2). Rockhold then directed his employee Rudolph to drive the shipment from Cleveland to St. Louis.[3] In turn, Rudolph invited his son Willis, and at some point between Ohio and Missouri, Willis was permitted to operate the van (Doc. 71 at 5). At approximately 5:25am on May 26th, Willis collided with a vehicle driven by the decedent while travelling westbound on I-70 in Fayette County, Illinois (*Id*. at 6). Unfortunately the collision was fatal, and the decedent was pronounced dead at the scene of the accident (*Id*.). Beck alleged the negligent acts and omissions made by XPO's co-defendants caused the decedent's death, and moreover asserted claims of Wrongful Death against all named defendants (*Id*. at 7-15). For relief, she requested judgment against XPO, in addition to the other defendants (*Id*. at 13).

On April 12, 2017, Beck filed a Motion for Partial Summary Judgment against XPO (Doc. 84). Specifically, she alleges XPO ratified acts of each named defendant, *as well as their agency*, by accepting and retaining benefits of employee performance (*Id*. at 7). In other words, Beck argues summary judgment is proper because XPO engaged in: billing Coyote Logistics for transport services;

---

[2] Intermediate pick-up stops were to be made in Toledo, OH and Fort Wayne, IN (Doc. 84 at 3).

[3] The van used for the transport was identified as a 2016 Dodge 2500 ProMaster, VIN number 3C6TRVDG0GE110157, License plate number GUD7096.

accepting payment for services rendered; accepting the performance of Rockhold, Rudolph, and Willis; and, in paying Rockhold, sanctioning the actions of its co-defendants (*Id.*). For relief, she requests grant of summary judgment in her favor regarding the Wrongful Death count asserted against XPO (*Id.*).

XPO's counterargument is simple: Beck failed to produce evidence that Rockhold, Rudolph, or Willis were its agents; and further, Beck's ratification argument is premature because she must first prove existence of an agency relationship before ratification can take place (Doc. 89).

Subsequently, XPO filed a Motion for Summary Judgment in its favor arguing, inter alia, the transport van and its driver Willis were never under, nor subject to, control of XPO; and, no vicarious liability exists for negligent conduct of independent contractors—one of which was not a qualified driver and should have never been operating the transport van (Doc. 91). Moreover, XPO reasons facts indicate it had no possession of sufficient control over co-defendants to warrant the involuntary creation of an agency relationship (Doc. 92).

In response, Beck argues, inter alia, that under the Federal Motor Carrier Safety Regulations (FMCSR), XPO is responsible for operation of the leased transport van—notwithstanding analysis of agency principles; and further, factual questions still exist pertaining to who had the right to control how Rockhold and his drivers performed services—which, in itself, precludes grant of summary judgment in XPO's favor (Doc. 100).

## II. ANALYSIS

### A. Motion for Partial Summary Judgment against XPO

Beck's argument in favor of partial summary judgment boils down to application of the legal doctrine of ratification. She contends XPO ratified acts of Rockhold, Rudolph, and Willis, and in doing so, exposed itself to consequential liability as if the aforementioned acts were performed under XPO's actual authority. *See, e.g., Rosenthal & Co. v. Commodity Futures Trading Comm'n*, 802 F.2d 963, 966 (7th Cir. 1986) (stating principals are strictly liable for agents' actions, even if agents are not employees, if principal authorizes or ratifies acts, or creates appearance that acts are authorized; even when principal does not himself direct acts and knows nothing of acts when they occur). However, determining whether ratification ensued turns on the existence of a principal-agent relationship between XPO and its co-defendants. *Cf. Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 672 (7th Cir. 2004) (party alleging agency relationship bears burden of proving its existence by preponderance of the evidence). Put differently, if Beck cannot establish with sufficient proof that XPO was principle and its co-defendants acted as agents—the Court will not entertain the ratification argument.

i. Establishing Proof of Agency

In Illinois, "[*t*]*he test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal.*" *Chemtool, Inc. v. Lubrication Tech., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) (emphasis added) ("Principal among these considerations is the right to control the manner that the work is done"). For summary judgment

purposes, the complaint and filings made to support an agency relationship "must allege specific facts regarding the circumstances from which the existence of the relationship can be inferred. [And] the party alleging an agency relationship has the burden of proving it." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 367 (7th Cir. 1992) (citing *Matthews Roofing v. Cmty. Bank & Trust*, 194 Ill.App.3d 200, 206, 550 N.E.2d 1189, 119 (1990) and explaining under Illinois law agent's authority can only come from his principal; this relationship need not depend on express appointment but may be found in situation of parties, their actions, and other relevant circumstances).

Therefore, Beck is required to demonstrate XPO and its co-defendants expressly agreed to agency; and in the absence of direct proof, she must establish a principle-agent relationship existed through circumstantial evidence. *See HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 163, 545 N.E.2d 672, 680 (Ill. 1989) (explaining plaintiff must still allege specific facts regarding circumstances of situation from which existence of relationship can be inferred).

ii. No Agency Relationship Sufficiently Alleged

Beck maintains Rockhold was XPO's agent, and Rudolph was the agent of both Rockhold and XPO in performance of transporting the blood shipment; and even if Rockhold and/or Rudolph did not act under scope of express or implied actual authority—under facts relating to what happened after the accident—XPO is still bound by the action of its co-defendants. *Conversely, unsubstantiated conclusory allegations are not enough to prove existence of an agency*

relationship. *See Qualex, Inc.*, 970 F.2d at 368 (where plaintiff failed to allege agency and only made unsupported conclusory assertion, burden of proof of agency relationship was not satisfied). Beck's mere labeling of XPO as principle and its co-defendants as agents within the Amended Complaint and subsequent pleadings is the epitome of an unsubstantiated conclusory allegation. *See Chemtool, Inc.* 148 F.3d at 746 (existence and scope of agency relationship are questions of fact decided by trier of fact).

Under FED. R. CIV. P. 56(c) a party asserting that a fact cannot be genuinely disputed must provide support by citing to particular parts of the record. However, "[i]f a party fails to properly support an assertion of fact, the court may[,] [among other things,] issue any other appropriate order." FED. R. CIV. P. 56(e)(4). Here, Beck has not provided proper support by record citation, and thereby has created a genuine dispute as to an asserted material fact, i.e. the existence of a principal-agent relationship. As a result, the Motion for Partial Summary Judgment against XPO is **DENIED**.

## B. XPO's MOTION FOR SUMMARY JUDGMENT

XPO argues entitlement to summary judgment because it concludes Rockhold, Rudolph, and Wills were not its agents; XPO retained no control over Rockhold's method of transportation; and, before Beck can proceed with a vicarious liability argument she must prove existence of a principle-agent relationship. Further, XPO proclaims Rockhold was an independent contractor and therefore argues exemption from vicarious liability regarding his actions.

"Generally, a person injured by the tortious action of another must seek his or her remedy from the person who caused the injury[,]" however, "[t]he principle-agent relationship is an exception to this general rule." *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530, ¶ 42 (stating under doctrine of respondeat superior principle may be held liable for tortious action of agent which caused plaintiff's injury even if principal does not himself engage in conduct related to plaintiff). Also—as XPO contends—generally, no vicarious liability exists for actions of independent contractors,[4] *see id.,* but "independent contractor status" does not prohibit vicarious liability if it is determined an independent contractor is also an agent. *See Horwitz v. Holabird & Root*, 212 Ill.2d 1, 13, 816 N.E.2d 272 (2004) (individual may be both independent contractor and agent with authority to control details of work and also power to act for and bind principal in business within scope of agency).

Facts and circumstances of each case determine the status of an individual. *See Petrovich v. Share Health Plan of Ill., Inc.*, 188 Ill.2d 17, 46, 719 N.E.2d 756 (1999) (explaining no precise formula exists for deciding status as independent contractor or agent; facts and circumstances of each case determine as such). The "right to control the manner of doing the work" is chief amongst all

---

[4] "An independent contractor is one who renders service in the course of an occupation representing the will of the person for whom the work is done only to the result of the work and not as to the means by which it is accomplished, and is one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result. * * * The test of the relationship is the right to control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent." *Carney v. Union Pac. R.R. Co.*, 2016 IL 118984, ¶ 31 (quoting *Hartley v. Red Ball Transit Co.*, 344 Ill. 534, 538-39, 176 N.E. 751 (1931) (internal citation omitted).

considerations,[5] and the burden of proving existence of an agency relationship is on the party attempting to impose liability on the principle. *See Lawlor*, at ¶ 44. In all, the determination of either agent or independent contractor status is a question of fact to be answered by the trier of fact, *see Dowe v. Birmingham Steel Corp.*, 2011 IL App (1st) 091997, ¶ 29; and "[w]hen the facts are undisputed, the trial court is permitted to decide the issue as a matter of law." *Pekin Ins. Co. v. Campbell*, 2015 IL App (4th) 140955, ¶ 38.

After carefully reviewing the record, and considering all evidence in the light most favorable to Beck, *see* FED. R. CIV. P. 56; *see also Smith on Behalf of Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 2017) ("'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences[]'"), the Court **cannot** definitively state that Rockhold, Rudolf, and Willis were acting as XPO's agents upon transporting the blood shipment from Cleveland to St. Louis.

In this case, the plain language of the Subcontractor's agreement identifies Rockhold and his employees as independent contractors. On the other hand, Beck contends the right to control trumps the label of "independent contractor" since she alleged XPO dictated the route of travel to Rockhold and Rudolph. Similarly, XPO argues it had no control over how the blood shipment was transported once the job was assigned to Rockhold; yet Beck alleged, inter alia,

---

[5] The following factors should also be considered a court's determination between agent and independent contractor: the question of hiring; right to discharge; manner direction was given; right to terminate relationship; and character of supervision of work completed. It is noted that one or more of these factors are not necessarily conclusive. *See Lawlor*, at ¶ 44.

XPO is subject to compliance with FMCSR regulations which would manufacture automatic vicarious liability for licensed motor carriers.[6] *None of these facts, whether combined or free-standing, sufficiently establishes that no genuine dispute of material fact existed as to whether XPO and Rockhold entered into a principal-agent relationship.*

Based on the pleadings, the facts determining "control" are in dispute. *See, e.g., Chemtool*, at 745 ("While an agency relationship can be created by contract or by conduct, not all contracts create agency relationships and not all conduct creates agency relationships."). Both arguments turn on the status of Rockhold. *See Petrovich,* at 31 ("Vicarious liability may nevertheless be imposed for the actions of independent contractors where an agency relationship is established under either the doctrine of apparent authority or the doctrine of implied authority"); *see also Lawlor*, at ¶ 43 (explaining fact that individual is an independent contractor does not prohibit vicarious liability for actions if said individual is also an agent).

The bottom line is the decision of whether Rockhold is an agent or independent contractor—for purposes of assigning vicarious liability—needs to be determined by the trier of fact. *See Dowe*, at ¶ 29. Subject to the fact that several genuinely disputed material facts exist, and no party—at this stage—is entitled to judgment as a matter of law, XPO's Motion for Summary Judgment is **DENIED**.

### III. CONCLUSION

---

[6] Conversely, XPO argues the FMCSR definition of "commercial motor vehicle" requires the transport van to have a gross vehicle weight of over 10,000lbs—and further alleges the transport van weighs less than 10,000lbs.

Based on the foregoing—and pursuant to FED. R. CIV. P. 56—Beck's Motion for Partial Summary Judgment against XPO (Doc. 84) is **DENIED**; likewise, XPO's Motion for Summary Judgment (Doc. 91) is also **DENIED**.

**IT IS SO ORDERED**.

Judge Herndon
2017.10.20
16:28:06 -05'00'

**UNITED STATES DISTRICT JUDGE**